570 P.2d 1293 (1977)
The PEOPLE of the State of Colorado, Appellee,
in the Interest of D. G. P., a child, Appellant,
and concerning D. E. P. and G. M. P., Respondents.
No. 27373.
Supreme Court of Colorado, En Banc.
November 15, 1977.
*1294 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Thomas J. Tomazin, Sharon S. Metcalf, Asst. Attys. Gen., Denver, for appellee.
Fredrickson, Johnson & McDermott, P. C., John A. McDermott, Canon City, for appellant.
Fredrickson, Johnson & McDermott, P. C., Tom N. Kiehnhoff, Canon City, for respondents.
KELLEY, Justice.
On April 26, 1976, D.G.P. was adjudicated a juvenile delinquent. The delinquency petition alleged that the appellant had committed attempted first-degree criminal assault with intent to cause serious bodily injury to a police officer,[1] and criminal trespass, both in the first[2] and second[3] degrees. The appellant's motions to dismiss the attempted assault charge on the grounds that such a crime did not exist in Colorado, and his motion for a new trial, were denied.
The appellant contends, among other points, that the evidence, even when viewed in a light most favorable to the prosecution, is not sufficient to sustain findings of guilt for any of the conduct which is the subject of this appeal. We agree and reverse.

I.

Criminal Trespass
The appellant was arrested on February 7, 1976, when he was found sleeping in a furnished apartment which did not belong to him. The apartment building had two floors, with offices on the first level and two apartments on the second. Although the record is unclear on the point, it appears that the building is immediately adjacent to the street and probably had no yard. Access to the second floor is by means of a stairway leading from a door on the first level. The evidence indicates that this door during the critical periods involved here was not locked, and the area surrounding the building was not enclosed by a fence nor posted with "No Trespassing" signs.[4]
The appellant entered the apartment, not by force, but with a key. The key had been given to the appellant's brother by the last tenant of the apartment. The tenant, Gordon Stevens, testified that when he gave the appellant's brother a key, he knew that the appellant's brother would probably use the key to gain entry for himself and his friends. The appellant testified that he had visited the apartment with his brother on at least one occasion and had never been asked by Stevens to leave it.
Stevens had paid his rent on the furnished apartment to the landlord through January 20. He was arrested on or about January 20. Immediately thereafter, Stevens' mother and his girl friend moved his possessions out of the apartment.
*1295 After Stevens vacated the apartment, the landlord noticed that beer cans and other debris were appearing in the apartment, but he could not find any signs of forced entry. He changed the lock on the door, but later discovered that the key to the previous lock would also open the new lock without using any force. Still, the landlord took no further affirmative action designed to give notice to trespassers.
Appellant testified that he used Stevens' key on four occasions to enter the apartment after January 20. He testified that he had no knowledge of Stevens' arrest or incarceration, nor of the termination of his tenancy; that he recognized the furniture in the apartment as Stevens'.
On the basis of the above, the trial court held that the appellant entered the apartment without license, invitation or other privilege. Section 18-4-502, C.R.S. 1973; section 18-4-201(3) C.R.S. 1973. The evidence, however, indicates that the appellant entered the apartment with the implied permission of the one whom he believed to be the tenant. Inasmuch as the key fit the lock to the door and there was no change of conditions to indicate to appellant that he would be trespassing if he entered the apartment, we hold that the People's evidence, as a matter of law, is not sufficient to prove that the appellant did enter or remain in the apartment unlawfully, as that term is used in the statute.
Similarly, the evidence is insufficient to support the charge of criminal trespass in the second degree, section 18-4-503, C.R.S. 1973. The main entrance to the building, as indicated above, was not locked; the area surrounding the building was not fenced; and there were no "No Trespassing" signs posted either in the yard, the building or the apartment.[5] The appellant's key opened the apartment door. Thus, there is no evidence to establish beyond a reasonable doubt that the appellant unlawfully entered or remained in premises "enclosed in a manner to exclude intruders or are fenced." Section 18-4-503.

II.

Attempted Assault
In a trial to the court without a jury, the court found that the appellant attempted to assault a police officer with a deadly weapon (a gun), with intent to cause serious bodily injury. Section 18-3-202(1)(e), C.R.S. 1973. We hold that the evidence as to this offense also was insufficient, as a matter of law, to support this finding.
An appellate court may not upset a guilty verdict for the sole reason that, if it were the finder of fact, it would have reached a different conclusion. People v. Vigil, 180 Colo. 104, 502 P.2d 418 (1972). The evidence must be reviewed in a light most favorable to the prosecution and, in so doing, all inferences most favorable in support of the verdict must be drawn. People v. Trujillo, Colo., 543 P.2d 523 (1975). "However, no judicial obligation is more imperative than the accomplishment of justice in any particular case where the trial record, as here, does not reflect as an absolute that every evidentiary requirement for sustaining a guilty verdict was fulfilled." People v. Emeson, 179 Colo. 308, 500 P.2d 368 (1972) (emphasis added).
Section 18-3-202(1)(e) requires evidence of the specific intent to do serious bodily harm.[6]See People v. Walker, Colo., 542 P.2d 1283 (1975); People v. Prante, 177 Colo. 243, 493 P.2d 1083 (1972);[7] see also Armijo v. People, 157 Colo. 217, 402 P.2d 79 (1965). Material elements of the offenses alleged in a delinquency petition must be proved beyond a reasonable doubt. Section 19-3-106(1), C.R.S. 1973 (1976 Supp.); see also D.W. v. District Court, Colo., 564 P.2d *1296 949 (1977). The prosecution did not meet its burden in this case. Police Officer Dale Tafoya was the prosecution's sole witness with regard to the first-degree assault charge. At trial he gave the following version of the incident. He entered the apartment, found the appellant asleep on the bed and attempted to wake him. When Tafoya finally awakened him, the appellant turned his head, looked up, and rolled over on his back. At that time, Tafoya saw a gun on the appellant's left side stuck in his belt. Tafoya said the appellant "rolled over pretty fast like and his hand came up with what I saw then was a gun." (emphasis added). Simultaneous with the appellant's movement, Tafoya lunged for the gun. He got it after a struggle, and the appellant jumped out of bed and started to run until Tafoya held a gun on him. Tafoya then explained that he got his hand on the gun before the appellant did; that appellant hit the back of his hand as appellant reached for the gun.
On cross-examination, Tafoya admitted that the appellant never had his hand on the gun and that he did not, in any manner, threaten or abuse Tafoya verbally. Tafoya was confronted with the inconsistent statements contained in his police report which he filed immediately after the incident. In the report Tafoya had the appellant sleeping on his right side and he stated "At this time I saw a gun on his right side. I jumped on . . . [the appellant] and grabbed the gun out of his hand." Tafoya said that his testimony at trial, i. e., that appellant never had the gun in his hand, was the correct version.
When given the chance to rehabilitate himself on redirect examination, Tafoya said that he was "startled more than anything else." He said that, since it was the first time he was confronted with a gun, he was "pretty well shook up" for the rest of the day.
Specific intent to do serious bodily injury may be inferred from attendant facts and circumstances. People v. Edwards, 184 Colo. 440, 520 P.2d 1041 (1974). However, even when the prosecution is given the benefit of the reasonable inferences which may be drawn from the evidence, the evidence presented here falls far short of showing the specific intent necessary to sustain a finding that the appellant committed first-degree assault upon Officer Tafoya. See, contra, People v. Walker, supra, (People established prima facie case by showing, among other things, that defendant had pointed a loaded gun at police officer); People v. Black, 185 Colo. 308, 523 P.2d 1402 (1974) (during questioning by police officer, defendant said, "Yes, I've got a gun and I'm goin' to kill me a . . . cop" and drew his gun during a struggle with the officers); People v. Mayfield, 184 Colo. 399, 520 P.2d 748 (1974) (defendant fired two shotgun blasts at police car); People v. Gordon, 178 Colo. 406, 498 P.2d 341 (1972) (defendant allegedly threatened to kill police officer, grabbed for the officer's holster and got hold of the officer's gun); People v. Prante, supra, (when defendant emerged from closet in response to officer's demand, he had a loaded gun leveled at officer which he refused to turn over to the officer).
Judgment reversed and remanded with directions to enter a judgment of acquittal.
LEE, J., concurs in part I and dissents as to part II.
NOTES
[1] Section 18-3-202(1)(e), C.R.S. 1973.
[2] Section 18-4-502, C.R.S. 1973.
[3] Section 18-4-503, C.R.S. 1973.
[4] Section 18-4-201(3), C.R.S. 1973, states that a person "unlawfully enters or remains" on unfenced or unenclosed unimproved land only when "notice against trespass is personally communicated to him by the owner of the land or some other authorized person, or unless notice forbidding entry is given by posting with signs . . .." The land in the instant case was improved so that "No Trespassing" signs were not required. However, counsel for appellant argued and the record indicates that the landlord was aware that persons were entering and using the apartment after the last tenant had vacated. The only precaution the landlord took was to change the interior lock, and even this precaution was not effective since the prior key would still operate the lock.
[5] Supra note 4, at 1294.
[6] There is no constitutional requirement that the defendant know that the victim of the assault is a police officer. People v. Prante, supra.
[7] These cases are based upon 1971 Perm.Supp., C.R.S. 1963, 40-3-202(1)(e), the exact predecessor of Section 18-3-202(1)(e), C.R.S. 1973.